SOUTH PORTO RICO SUGAR Co., Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 6235.   Argued May 25, 1934.—Decided January 18, 1935.

*R. Castro Fernández* for appellant.   *Benjamin J. Horton, Attorney General,* and *M. Rodríguez Serra, Assistant Attorney General* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

This is an action instituted by the South Porto Rico Sugar Co., a domestic corporation, against the Treasurer of Puerto Rico, for the collection of $36,714.63, plus interest thereon, for taxes paid under protest.

On November 27, 1921, the plaintiff filed with the defendant Treasurer the following return of surpluses for the taxable year from October 1, 1918 to September 30, 1919, for the purposes of Act No. 80 of 1919:

"1—Total net income for the year 1919_____ $1, 184, 822. 01
"2—D.vidends paid out of net income_____ 84, 000. 00

"3—Surplus _____ $1, 100, 822. 01

Deductions:

"4—50% of the amount appearing on line 3\_\_ 550, 411. 00
"5—Amount of net income paid for the cancel-
      lation of obligations pending prior to the
      beginning of the tax year, without interest 900, 000. 00
"6—Gross amount of the normal and additional
      tax paid_____
"7—Total deductions_____ $1, 450, 411. 00."

In accordance with the said Act No. 80, in force during the fiscal year 1918–19, every corporation was required to file two returns, one for the purposes of the normal tax and surtax prescribed by Sections 20 and 21 of the said Act, and another for the purposes of the tax on the surplus over the net income, prescribed by Section 22, which reads as follows:

"Section 22.—That in addition to the normal tax and surtax prescribed by Sections 20 and 21, there shall be levied, assessed, collected and paid for each taxable year on the surplus over the *net income* of every domest'c corporation or association, excluding civil partnerships, a tax of 5 per cent.

"The amount of said surplus shall be computed by *deducting from the total net income* the following allowances:

(1) The amount of *dividends* actually paid out of sa'd income;

(2) A sum equal to *50 per cent* of the net income resulting after the deduction of the dividends;

(3) The amount actually paid out of the net income *for the cancellation of the obligations* of the corporation or association, outstanding prior to the commencement of the taxable year, but not including interest on said obligations;

"(4) The amount of the normal tax and surtax paid in accordance with Sections 20 and 21 on the total income."

After several proceedings which need not be mentioned as they are not connected with the questions at issue, the Treasurer decided to consolidate the net incomes of the plaintiff and of the corporation South Porto Rico Sugar Co. of New Jersey, fixing them at $1,960,669.88, and eliminating the deduction of $900,000 requested by the plaintiff by reason of obligations paid during the taxable year 1918–19, and on that basis the Treasurer estimated that the taxes on surpluses to be paid by the plaintiff amounted to $35,823.03.

On September 4, 1930, the plaintiff paid under protest the taxes fixed by the Treasurer, which taxes, together with surcharges thereon, amounted on that date to $36,714.63.

The complaint and the evidence of the plaintiff tend principally to affirm:

1.—That the Treasurer had no power to consolidate the returns of surpluses of the South Porto Rico Sugar Company of New Jersey with those of the plaintiff.

2.—That the sum of $900,000 was actually paid during the taxable year 1918–19 to cover obligations previously incurred and that, therefore, the same should have been deducted from the surpluses for the purposes of taxation.

The lower court held that the Treasurer had no power to make the consolidation of return; that the net income of the plaintiff during the year 1918–19 amounted to $1,536,205.87; that the books of the plaintiff did not show that the sum of $900,000 had been actually paid during the taxable year 1918–19 and that, therefore, said sum could not be deducted

from the surpluses. According to the lower court, the tax on surpluses should have been computed in the following form:

```
"1—Total net income for the year 1919_____  $1,536,205.87
"2—Dividends paid out of net income_____      84,000.00

"3—Surplus _____  $1,452,205.87
```

DEDUCTIONS:
```
"4—50% of the amount appearing
      on line 3_____  $726,102.94
"5—Amount of net income paid
      for the cancellation of ob-
      ligations pending prior to
      the beginning of the taxable
      year, excluding interest___  _____
"6—Amount of the normal tax and
      surtax paid for the taxable
      year _____  148,608.60

"—Total deductions_____  874,711.54

"8.—Amount subject to the 5% tax_____  $577,494.33
"9—5% of the amount of item No. 8_____   28,874.72."
```

Taking as a basis the preceding computation, the lower court formulated the following conclusions:

"So that, as the tax to be paid, that is $28,874.72, was not paid until September 4, 1930, surcharges up to that date, amounting to $702.62, should have been paid, making a total of $29,577.34.

"Therefore, the plaintiff is entitled to the reimbursement of the difference betwewen the amount paid by it under protest, that is, $36,714.63, and the sum of $29,577.34, which should have been paid by it, that is, $7,137.20 with interest at the rate of 6% per annum from September 5, 1930 until the total payment thereof.

"Judgment is in order, therefore, in favor of the plaintiff for the sum of $7,137.29, with interest at the rate of 6% per annum from September 5, 1930 until the total payment thereof, all without special determination of costs."

From this judgment, which is limited to condemning the Treasurer to pay the sum of $7,137.29, plus interest thereon, only the plaintiff appealed. It is alleged that the lower court

erred in deciding that the sum of $900,000 was not paid by the plaintiff during the taxable year 1918–19. The appellant alleges that during the said year it paid the aforesaid sum out of its net income, for certain obligations previously incurred.

The evidence for the plaintiff tends to show (*a*) that it commenced its business on September 30, 1918; (*b*) that at the time of commencing said business it owed to the South Porto Rico Sugar Co. of New Jersey, among other sums, that of $900,000 for three promissory notes of $300,000 each, which, together with other obligations, represented the price of the sale to the plaintiff of the sugar factory and other properties of the New Jersey corporation; (*c*) that during the taxable year 1918–19 the plaintiff obtained profits, almost wholly derived from the production and sale of sugar, which the lower court fixed at $1,536,205.87, and that said profits were entered in the books of the plaintiff at $1,184,822.01; (*d*) that on September 30, 1919, the New Jersey corporation owed the plaintiff the sum of $1,923,041.29 for sugar sold; (*e*) that on September 30, 1919 the plaintiff paid to the New Jersey corporation the three $300,000 promissory notes through an entry in the books, that is, through adjustment of mutual indebtedness, thus reducing the balance owing to the plaintiff to $1,023,041.29; (*f*) that on that same date, September 30, 1919, the $300,000 promissory notes were canceled by the New Jersey corporation, and were later returned, thus canceled, to the plaintiff, the account carried by the plaintiff under the heading of "Notes Payable," being at the same time reduced in the amount of $900,000.

Plaintiff also produced evidence to prove that its net profits for the year 1918–19, estimated at $1,184,822.01, were carried on their books to the account "Profit and Loss," and that this account was disposed of in the following manner:

(1) $84,000 were debited, and credited to the account of dividends payable;

(2) $900,000 were also debited and that amount credited to an account entitled "Reserve for Working Capital, Payment of Notes";

(3) $200,822.01 were also debited, and that amount credited to the account "Surplus".

It appears that the credit of $900,000 to the account "Reserve for Working Capital, Payment of Notes," was carried on the books of the plaintiff for the year 1919–20, that is, that the said account was not closed on September 30, 1919, but was carried as a whole on the books of the plaintiff for the following year. From this fact the Treasurer concluded and also the lower court, that the three promissory notes in the amount of $300,000 each, were not paid on September 30, 1919. Plaintiff's proof, in so far as the payment and cancellation of the said notes, was not in any manner or form contradicted. The case, therefore, rests exclusively on the interpretation and the effect to be given to the fact that the account "Reserve for Working Capital, Payment of Notes," showed a credit of $900,000 after September 30, 1919.

The Treasurer and the lower court understood that the reserve account represented an amount of money with which to pay the three promissory notes, and concluded that, had that amount been paid, the credit of $900,000 could not stand. Let us examine the nature of the reserve account in questions so as to determine if this conclusion is justified.

It is elementary that the value of the property of an entity, less the total of the indebtedness and obligations, represents the capital. In other words, the value of the property is equal to the amount of the obligations plus the capital. It is upon this basis that the books of the great majority of entities devoted to commerce or industry are carried at the present day. Accounts are opened which represent the value of the property. The total of these accounts

must be equal to the total of the other accounts where obligations and capital are set forth in detail.

There is no doubt that the account "Reserve for Working Capital, Payment of Notes," was in this case a capital account and that it appeared as part of the liabilities. The lower court admits this to be so, but errs in considering it at the same time as an asset account, that is, in considering that the said account represented property valued at $900,000 which had to be devoted specifically to the payment of the three promissory notes, and the court is surprised that, if the three promissory notes were really paid with the said sum, the sum in question should appear in the following year as part of the liabilities. But it is evident that an indebtedness cannot be paid with liabilities. Indebtedness is paid with assets. Therefore, if the account "Reserve for Working Capital, Payment of Notes," is a liability account, it is not possible to expect that the notes be paid from that account. It may be that finally, this account represents an amount to be distributed among shareholders in some way, as, for instance, in case of dissolution; meanwhile, however, this sum must be shown on the books as part of the liabilities. Due to the legal requisite that the total capital in shares must appear at their original value—which is, ordinarily, the par value of the shares—any increases or decreases in same by reason of profits earned or losses sustained, reinvested in the business, must be made to figure in the books under different accounts. *Kester on Accounting —Theory and Practice*, p. 407.

But then, with what were the obligations paid? The answer is simple: with property, with part of the assets, with part of the credit balance which, by reason of sugar sales, plaintiff had against the New Jersey corporation, as clearly shown by the books of the said plaintiff. That credit balance was reduced in the sum of $900,000, and the liabilities were also reduced in the same amount by crediting the account "Notes Payable".

What necessity is there, then, for the existence of the account "Reserve for Working Capital, Payment of Notes?" It has been demonstrated that the corporation earned profits during the year 1918–19 amounting to over $1,000,000. This means that the capital was increased by that amount, or, in other words, that the difference between property and obligations was increased by that amount. The increase in the capital was not extinguished during the year 1918–19 except in so far as that part of the said increase which was devoted to the payment of dividends. There was a permanent increase in the capital, and that increase, pursuant to comercial practice, had to be carried on the books as a capital account. It was so done. A capital account entitled "Surplus" was opened, and part of such increase was covered into this account. The balance was covered into another capital account entitled "Reserve for Working Capital, Payment of Notes".

This does not mean that sums of money were set aside and deposited in a safe place under the headings "Surplus" and "Reserve for Working Capital, Payment of Notes." These capital accounts are purely nominal. The assets are represented as a whole in the assets accounts. Thus we have that the capital accounts merely indicate certain purposes to which that part of the assets in excess of the obligations are intended to be devoted, and the account "Reserve for Working Capital, Payment of Notes," therefore, merely indicates that out of such assets in excess of the obligations, the sum of $900,000 has to be devoted to the payment of notes and ordinary operating expenses of the industry. It appears from the books that part of the assets were devoted, as a matter of fact, to the payment of three promissory notes in the amount of $300,000 each. Were such assets in excess of the obligations thus reduced, or, in other words, was the capital reduced by the payment of the three notes? Of course not. The assets were reduced in the

amount of $900,000, but the obligations were also reduced in the same amount, as shown by the books, through deductions in the obligations account called "Notes Payable". Capital admits of no shrinkage through the payment of obligations. The excess of assets over obligations remained intact. That part of said excess represented by the account "Reserve for Working Capital, Payment of Notes," also remained intact. As the obligations had already been paid, it could be considered, in the future, that that part of the excess was to be devoted to current expenses.

We are of the opinion that the lower court erred in its interpretation of the account "Reserve for Working Capital, Payment of Notes," and that the books of the plaintiff clearly show that the three obligations for $300,000 each were paid on September 30, 1919.

Inasmuch as the evidence shows that the notes were issued previous to the fiscal year 1918–19 and were paid out of the receipts of the plaintiff during the said year, we are of the opinion that the plaintiff had the right, in accordance with section 22 of Act No. 80 of June 26, 1919, to deduct from its "Surplus," for the purposes of the tax on surpluses levied by the Act referred to, the sum of $900,000 paid to cover the three promissory notes. It is quite apparent from the evidence introduced, that once this deduction is made it is clear that no taxable surplus exists.

Judgment of the lower court, therefore, must be reversed and judgment issued in its place sentencing the defendant to return the sum of $36,714.63 paid under protest, with interest on said sum at the rate of 6% per annum from September 5, 1930, until paid in full, without special determination of costs.

It is alleged, also, as a second error, that the Treasurer of Puerto Rico lacked authority and power to compute and levy a tax on said plaintiff and to institute any proceedings

for the collection of same inasmuch as more than five years had elapsed since the date of the return of said surplus was filed. Since the first error was decided in favor of the plaintiff corporation and the judgment appealed from was reversed for the reasons given in this opinion, it is not necessary to consider this second error.